HANKINS, ADMINISTRATOR, v. KIMBALL.

DECEDENTS' ESTATES.—*Real Estate.*—*Executor and Administrator.*—*Descents.*
—*Wills.*—As a general rule, real estate, on the death of the owner, passes
to the heir or devisee, and the administrator or executor has no power over
it, except that given by the statute or the will.

SAME.—*Conveyance by Executor.*—*Release.*—*Tort.*—*Railroad Company.*—*Action
by Devisee against Executor.*—An executor has no power, as such, to execute
to a railroad company a release to a right of way over lands belonging
to his testator's estate, and can not be held liable, as such, for money re-
ceived by him for such release, in an action against him by the devisee.

SAME.—*Assets.*—Money so received by an executor is no part of the assets
of such estate.

From the Fayette Circuit Court.

*J. C. McIntosh*, for appellant.

*B. F. Claypool*, for appellee.

PERKINS, C. J.—Suit by the appellee, against the ap-
pellant, upon a cause of action growing out, in a measure,
as is claimed, of the last will of Daniel Hankins, de-
ceased. We give so much of the will as bears upon the
questions arising in this case.

The first item of the will gives directions as to the
funeral of the testator.

The second directs the payment of his debts.

The third gives a life-estate in a farm to his grand-
daughter Amanda Brumfield.

This is the fourth: "It is my desire, that, should my
granddaughter Ida Kimball live until she arrives at the age
of eighteen years, thenceforward, as long as she may
live, she do have the exclusive use and profits, after de-
ducting taxes, costs of repairs and improvements proper
with the management of the same, of the following described
farm," describing it; "and upon her death leaving issue of
her body, it is my desire that such issue do inherit said farm,
with the privileges, etc., in fee-simple, absolutely, after the
manner of the law regulating descents in said State.
Should she, however, die without leaving issue, in that

event, it is my desire that the said farm do pass into the residuum of my estate, to be disposed of as is provided herein in that behalf. And this provision for my said granddaughter Ida, in addition to what I have done, and may yet do and provide, for her in person during my life, in and about her education, maintenance and support, it is my will shall be in full of the share of herself and heirs in my estate."

The fifth item is immaterial in this suit. It explains why he leaves his wife to take the share in his estate which the law gives her.

This is the sixth: "Should my said granddaughters, or either of them, not find it agreeable to reside on the farm set apart for each respectively, or in said county of Fayette, it is my desire that some suitable person be appointed by the proper court of said county, to have the management of the proper farm or farms, and it is my desire that such manager, after paying the proper taxes and costs of repairs, improvements and management, do annually, or oftener as convenient, pay over the net balance to the proper person entitled thereto, taking proper vouchers, and making reports to said court as in the case of a guardian of a minor's real estate. And should either of said farms be managed by the person for whose use it is set apart, directly or indirectly, and should the proper payment of taxes thereon be neglected, so that penalty be incurred, or should waste be wilfully committed or suffered thereon, affidavit of either of said facts being made in good faith, by any person interested in the residuum of my estate, in that case the person so neglecting, committing or suffering, shall thence forever be deprived of the right to reside upon, or have the management of, such farm, taking thereafter only the net profits thereof, as above provided."

The seventh item provides that the balance of his estate, after the provisions made for his two granddaugh-

ters, shall go according to the law of descent; and the eighth appoints an executor.

At the death of the testator, Daniel Hankins, his granddaughter Ida had not arrived at the age of eighteen years, and the executor of Hankins took possession of the farm devised to her, as mentioned in the will. While he was so in possession, and before Ida had come to the age of eighteen, a railroad, now The Fort Wayne, Muncie and Cincinnati Railroad, was located through this farm, on a strip thirty feet wide, for the release to the right of way upon which the said railroad company paid the executor three hundred dollars, and he received fifty-four dollars, in addition, for wood taken from the strip. These moneys were all received by the executor, and mingled with the assets of the estate.

This suit is prosecuted by Ida, to recover from the executor, as such, said sum of three hundred and fifty-four dollars. The court gave her judgment for interest upon three hundred of it for five years, that is, from the 12th day of November, 1870.

We should here state that a demurrer to the complaint was overruled, and exception taken. This ruling, among others, is assigned for error in this court. It appears that the executor released the right of way over the land above mentioned, and received the money of the railroad company in compensation therefor, without authority. Neither the law, nor the heirs, nor the devisee gave him power to do the act. *Boynton* v. *Peterborough, etc., R. R. Co.*, 4 Cush. 467, is in point. It is there decided, that, " where the land of one deceased is taken for a railroad, the heir and not the administrator is entitled to the damages for such taking, and to prosecute for the recovery thereof, although the administrator has previously represented the estate to be insolvent, and afterwards obtained a license to sell the intestate's real estate for the payment of debts; " and, further, that the

Hankins, Adm'r, *v.* Kimball.

damages could not be received by the administrator and administered as assets of the estate.

In *Lucy* v. *Lucy*, 55 N. H. 9, it was held, that the real estate of a decedent vests at once in the heir or devisee; that the administrator can not lawfully take the rents and profits; and that, " in such case, if the administrator has received the rents and profits, he is not to be charged with them in his administration account, but is liable to account to the heirs for the same."

In *Haslage* v. *Krugh*, 25 Pa. State, 97, it was held, that a lease given by an administrator of land of the decedent was void, and that rents received by him on the lease were not part of the assets of the estate, and that the sureties on his administration bond, therefore, were not liable for them, if wasted by the administrator. See additional cases to the same effect in 2 Williams on Executors, p. 893, 6th Am. ed., notes.

These decisions harmonize with the provisions of our own statute on the subject of decedents' estates and the administration thereof. By those, the executor or administrator inventories the personal estate, and such real estate as is devised to pay debts and legacies and directed by the will to be sold for that purpose and nothing else; these alone are appraised; to these alone, the power of administration extends; and the administration bond covers the acts of administration, as to these alone. Where the executor or administrator assumes to act outside of his power under the law, he is a wrong-doer, and personally responsible, in his natural capacity, to parties injured.

As a general rule, as we have seen, land, on the death of the ancestor, passes to the heir or devisee, and the administrator or executor has no power over it, except what may be given by the statute or the will. He can not, in the absence of authority, take in nor pay out money from it, as administrator; for if he can, he can waste it as administrator, and render the sureties on his bond

liable for it. And it would enable an executor or administrator very indefinitely to augment estates, if he could take, in his capacity as such, all the property he could get hold of belonging to third persons, and pay it in as part of the assets to be administered.

Who, besides the first wrong-doer, may be liable for such property, we do not inquire. If we are right in the view we have taken, this case falls directly within that of *Rodman* v. *Rodman*, 54 Ind. 444, which decides that an action like the present, upon the facts appearing in it, can not be maintained against an executor or administrator as such.

We need examine no other question in the cause.

The judgment is reversed, with costs, and the cause remanded for further proceedings, in accordance with this opinion.